NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| : | **Hon. Dennis M. Cavanaugh** |
| LUSO FUEL INC., : | |
| : | **OPINION** |
| Plaintiff, : | |
| : | Civil Action No. 08-CV-3947 (DMC) |
| v. : | |
| : | |
| BP PRODUCTS NORTH AMERICA, : | |
| INC., : | |
| : | |
| Defendant. : | |
| : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Defendant BP Products North America, Inc.'s ("Defendant") motion to dismiss for failure to state a claim upon which relief can be granted. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of the parties, and for the reasons set forth below, Defendant's motion is **granted**.

## I.    BACKGROUND

Plaintiff Luso Fuel, Inc. ("Plaintiff") is the owner and operator of a franchised BP gasoline station in Union, New Jersey (the "station"). The franchise relationship operates pursuant to the terms of a Commission Marketer Agreement ("CM Agreement") and Commission Marketer Lease Agreement ("CM Lease," and, collectively with the CM Agreement, the "Franchise Agreements"). The Franchise Agreements were first entered into by the parties' predecessors-in-interest in 1970. Defendant became a party to the Agreements on

October 14, 2004.  Plaintiff first became involved with the station in July 2007, when Plaintiff's predecessor-in-interest transferred his rights, title and interest in the Franchise Agreements to Plaintiff pursuant to a CM Transfer Agreement.  The CM Transfer Agreement established Plaintiff as Commission Marketer ("CM") for the station.

Defendant does not own the property upon which the station sits, but rather leases the property from a third-party landlord according to a ground lease.  The ground lease was initially entered into by Defendant's predecessor-in-interest in March 1970, and was set to have expired on December 31, 2005.  Upon becoming a party to the Agreements in 2004, Defendant extended the ground lease through December 31, 2008.  The parties differ over whether Defendant had any right to extend the ground lease beyond its December 31, 2008 expiration date.  In any event, Plaintiff alleges that it entered into the Franchise Agreements only after Defendant made oral representations that it would renew the ground lease with the property's landlord.  Defendant denies that it made any such representations.

The CM Agreement and Lease are expressly limited by Defendant's right to possess the underlying property.  Additionally, each agreement contains an integration clause stating that, "the term of this [contract] is subject to [the term of the ground] lease."  The Agreements also include a clause stating that, "[Defendant] may have options to renew [the ground] lease for certain renewal terms which [Defendant] may exercise or may not exercise at its election." Despite this reservation of rights, Plaintiff invested a substantial amount of money in the business upon becoming the station's CM.  Plaintiff alleges that these investments were made with the understanding that the ground lease would be extended, and thus that the franchise

relationship would continue beyond its original term.

On June 18, 2008, Plaintiff received a letter from Defendant stating that Defendant had lost its right to continue its tenancy under the ground lease and that, as a result, Defendant would terminate Plaintiff's CM relationship as of December 31, 2008. Plaintiff was advised to conclude its business affairs and to quit the premises by year-end.

Plaintiff filed a Complaint in this Court on August 7, 2008, raising claims for: (1) violation of the New Jersey Franchise Practices Act; (2) breach of the covenant of good faith and fair dealing; (3) intentional misrepresentation; (4) negligent misrepresentation; (5) tortious interference with contract; (6) tortious interference with prospective economic advantage; (7) unjust enrichment; and (8) *quantum meruit*. The Court denied Plaintiff's request for a preliminary injunction on August 14, 2008. Currently before the Court is Defendant's motion to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6), which, as explained below, is being converted by the Court into a motion for summary judgment pursuant to Fed. R. Civ. P. 56.

## II.   DISCUSSION

### A.   *Standard of Review*

Defendant moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(d), however, permits courts, when presented with a motion to dismiss under Rule 12(b)(6) that relies on or references matters outside the pleadings, to convert that motion into a motion for summary judgment, provided that all parties are given a reasonable opportunity to present any materials pertinent to the motion.

Here, in support of and in opposition to Defendant's motion to dismiss, the parties

3

repeatedly reference several documents that were filed in conjunction with the Complaint and as part of Plaintiff's request for emergent injunctive relief, including, *inter alia*, the affidavit of Jared A. Resnick, the CM Transfer Agreement, the CM Agreement, the CM Lease, and the Franchise Termination Letter.  As a result, based upon the pleadings as well as the referenced materials filed with the Complaint and Plaintiff's emergent request for injunctive relief, the Court finds that the issues in this case are sufficiently ripe to be resolved under Rule 56 as a motion for summary judgment.[1]

Pursuant to Rule 56, summary judgment shall be granted when the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  Disputes over non-material facts may be resolved in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Where facts material to the outcome are at issue, however, the motion may not be disposed of by summary judgment.  Id. at 248.  The moving party bears the burden of showing that no genuine issues of fact exist.  See Celotex, 477 U.S. at 330.  The non-moving party, however, "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor.  See Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

---

[1]The parties were informed by the Court that it intended to treat Defendant's motion as a motion for summary judgment.  Pursuant to Rule 12(d), the parties were given the opportunity to submit additional materials pertinent to the motion.  Both parties consented to the conversion and declined to file any additional materials.

4

B.    *New Jersey Franchise Act Claim*

Plaintiff first raises a claim under the New Jersey Franchise Act (the "Franchise Act"),
arguing that Defendant was prohibited from terminating the franchise because Plaintiff was in
substantial compliance with the Franchise Agreements.  The Franchise Act prevents franchisors
from terminating, cancelling or failing to renew a franchise without "good cause."  See Gen.
Motors Corp. v. Gallo GMC Truck Sales, Inc., 711 F. Supp. 810, 814 (D.N.J. 1989).  The Act
exists as a recognition of the franchisor's superior bargaining position in the franchise
relationship, and is intended to "rule out arbitrary and capricious cancellation of franchises while
preserving the right of franchisors to safeguard their interest through application of clear and
nondiscriminatory standards."  See Westfield Centre Serv., Inc. v. Cities Serv. Oil Co., 432 A.2d
48, 54 (N.J. 1981); Sarwari v. BP Prods. N.A., Inc., No. 06-2976, slip op. at 4–5 (D.N.J. Sept.
15, 2006) (order denying preliminary injunction).  Accordingly, courts have interpreted the
Franchise Act to permit termination of a franchise relationship only upon a finding of "good
cause"—i.e., that the franchisee has failed to substantially perform its obligation under the
contract.  See Amerada Hess Corp. v. Quinn, 362 A.2d 1258, 1265 (N.J. Super. Ct. Law Div.
1975).  Frequently this is true even where the franchisor acted "in good faith and for a bona fide
reason."  See Atlantic City Coin & Slot Serv. Co., Inc. v. IGT, 14 F. Supp. 2d 644, 658 (D.N.J.
1998).

At issue in this case is whether the Franchise Act prevents a franchisor from terminating a
franchise due to the expiration of the underlying property lease, even where the negotiated terms
of the franchise agreement specifically subjugate the  term of the franchise to the duration of the

property lease.  Plaintiff argues that Defendant did not have "good cause" to terminate its

franchise, even though the underlying ground lease had expired, because Plaintiff had

substantially performed its obligations under the Agreements.  The Court disagrees.  While

Plaintiff correctly recites the "good cause" standard, it nonetheless fails to recognize that the

purpose of the Franchise Act is to protect franchisees from the "arbitrary and capricious

cancellations of franchises," and that it also preserves the right of franchisors to "safeguard their

interest through application of clear and nondiscriminatory standards."  See Westfield Centre

Serv., 432 A.2d at 54.  Here, Plaintiff was a party to arms-length negotiated agreements that

expressly provided for the franchise's termination upon the expiration of the underlying ground

lease.  The Agreements further provided that, to the extent Defendant had any renewal options,

Defendant was free to exercise or not exercise those options "at its election."  Accordingly, based

upon the terms of the franchise compact, it appears that Defendant's termination of the franchise

in this case, following the expiration of the ground lease, was merely the exercise of a negotiated-

for contractual right.

       Nor is this case analogous to those in which courts have found a violation of the

Franchise Act even though the franchisor acted "in good faith and for a bona fide reason."  In

those cases, the franchisor typically sought to change the terms of the agreement by unilateral

action during the pendency of the contract itself.  See, e.g., Gen. Motors Corp., 711 F. Supp. at

816 (franchisor's decision to withdraw from heavy duty truck market for economic reasons in the

middle of the contract was violation of Franchise Act); Westfield Centre Serv., Inc. v. Cities

Serv. Oil Co., 386 A.2d 448, 455–56 (N.J. Super. Ct. Ch. Div. 1978) (franchisor's attempt to sell

property underlying franchise after determining that the location was not economically feasible violated Franchise Act); <u>Sarwari v. BP Prods. N.A., Inc.</u>, No. 06-2976, slip op. at 10 (D.N.J. Sept. 15, 2006) (franchisor's attempt to switch the "channel of trade" for its business was effectively a termination of the franchise).  Here, however, Defendant's termination of the franchise arose directly from the expiration of the underlying property lease, an occurrence specifically contemplated by and addressed in the Franchise Agreement.  As a result, Defendant's actions can hardly be deemed unilateral, or even a change to the franchise relationship itself, because the termination was merely the exercise of a negotiated-for contractual right that existed as part of the franchise's framework.

Rather, the Court finds this case more analogous to <u>Ricco v. Shell Oil</u>, in which the New Jersey Superior Court held that, in connection with the termination of a gasoline franchise, the "loss of the right to grant possession through expiration of an underlying lease is an event deemed to be reasonable and not 'arbitrary or discriminatory.'" <u>See</u> 434 A.2d 1151, 1154 (N.J. Sup. Ct. Ch. Div. 1981).  Although <u>Ricco</u> was decided under the Petroleum Marketer Practice Act, an act that is less protective of franchisees than New Jersey's Franchise Act, see <u>Sarwari v. BP Prods. N.A., Inc.</u>, No. 06-2976, slip op. at 8 (D.N.J. Sept. 15, 2006), the Court nonetheless finds it instructive for its finding that the termination of a franchise is not "arbitrary or discriminatory" when based upon the expiration of an underlying property lease.

Here, the Court finds that Defendant's termination of Plaintiff's franchise following the expiration of the underlying ground lease was not "arbitrary and capricious."  Defendant had "good cause" for terminating the relationship because it merely exercised a negotiated-for right

that existed as part of the franchise's contractual framework.  Furthermore, the Court finds that

this matter is ripe for summary judgment because no genuine issues of material fact exist that

preclude judgment as a matter of law.  Plaintiff raises factual disputes regarding whether

Defendant had the right to renew the ground lease and whether Defendant verbally represented

that it would renew the lease.  The Court finds that these factual disputes are immaterial under

the terms of the Franchise Agreements, however, because the Agreements expressly grant

Defendant the right to elect not to renew the ground lease, and because the Agreements include a

"merger clause" that precludes reliance on external evidence, including extraneous verbal

representations, to interpret the contract.  Accordingly, because the Court finds that no issues of

fact exist that prevent a determination of this claim as a matter of law, and because the Court

finds that Defendant's termination of Plaintiff's franchise was for "good cause" and not

"arbitrary and capricious," summary judgment on this claim is appropriate.

   C. *Breach of the Implied Duty of Good Faith and Fair Dealing Claim*

   Plaintiff next brings a claim for breach of the implied covenant of good faith and fair

dealing.  It is well settled that "[e]very party to a contract . . . is bound by a duty of good faith and

fair dealing in both the performance and enforcement of [a] contract."  See Brunswick Hills

Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 864 A.2d 387, 395 (N.J. 2005).  This

implied covenant provides that "neither party shall do anything which will have the effect of

destroying or injuring the right of the other party to receive fruits of the contract."  See Wilson v.

Amerada Hess Corp., 773 A.2d 1121, 1126–27 (N.J. 2001).  Nonetheless, the implied duty of

good faith and fair dealing "does not operate to alter the clear terms of an agreement and may not

be invoked to preclude a party from exercising its express rights under such an agreement." <u>See</u> <u>Fleming Cos. v. Thriftway Medford Lakes Inc.</u>, 913 F. Supp. 837, 846–47 (D.N.J. 1995).

Here, Plaintiff argues that is was deprived of the "fruits of its agreement" when Defendant failed to extend the underlying property lease.  Plaintiff argues that the Franchise Agreements required Defendant to make a good faith effort to renew the ground lease, particularly after Defendant's alleged verbal representations that it would so.  The Court disagrees.  As noted above, the implied covenant of good faith and fair dealing cannot be used to alter the express terms of an agreement, or to preclude a party from exercising its express rights under a contract.  <u>See</u> 913 F. Supp. at 846–47.  Here, the express terms of the CM Agreement and Lease provide that Defendant had the right to exercise, or not exercise, any renewal options "at its election."  Plaintiff cannot now assert the implied duty of good faith as a means of precluding Defendant from exercising its express rights under the Agreements.[2]  Accordingly, because the CM Agreement and Lease give Defendant the express right to elect not to renew the ground lease, and because application of the implied covenant of good faith and fair dealing in this context would "alter the clear terms of [the] agreement," Plaintiff's claim is dismissed as a matter of law.

   D.   *Misrepresentation Claims*

---

[2]Nor may Plaintiff's claim rest on Defendant's alleged verbal representations that it would attempt to extend the ground lease.  Not only do such representations "alter the clear terms of the agreement" and "preclude [Defendant] from exercising its express right" to elect not to renew, but any such evidence is precluded by the Agreements' integration clause, which specifically states that "[n]o representations or statements other than those expressly set forth herein have been relied upon by the parties in entering into this Agreement."

Plaintiff next raises claims for fraud and negligent misrepresentation, arguing that, in entering into the Franchise Agreements, it relied to its detriment upon Defendant's verbal representations that the ground lease would be extended and that the franchise relationship would continue after the expiration of its original term.  Claims for fraud or negligent misrepresentation require a showing that, *inter alia*, the plaintiff actually and reasonably relied on the alleged misstatement.  See Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1182 (3d Cir. 1993) (citing Jewish Ctr. of Sussex County v. Whale, 432 A.2d 521, 524 (N.J. 1981)).  Reliance is not reasonable where the substance of the alleged misstatement is contradictory of the undertakings expressly dealt with by the written contract.  See, e.g., Winonka Village, Inc. v. Tate, 84 A.2d 626, 628 (N.J. Sup. Ct. App. Div. 1952).

Here, the alleged verbal representations cited by Plaintiff are directly contradicted by the express terms of the CM Agreement and Lease, each of which contains a clause stating that the term of the franchise "is subject to [the] underlying lease," and that, to the extent any options to renew the Ground Lease exist, Defendant "may exercise or may not exercise [such option] at its election."[3]  Accordingly, because the express terms of the Franchise Agreements make clear both that the franchise relationship would terminate upon the expiration of the underlying ground lease and that Defendant retained the right to refuse to exercise any renewal options, the Court

---

[3]Nor is the Court persuaded by Plaintiff's argument that the verbal representations do not contradict the Franchise Agreements because the Agreements do not prohibit Defendant from negotiating an extension.  The importance of the written terms is not only that they grant Defendant the right to extend the ground lease, but that they also grant the right to refuse an extension "at [Defendant's] election."  The alleged verbal representations would take away Defendant's right to elect not to exercise a renewal option.

10

finds that Plaintiff's reliance on Defendant's alleged verbal representations to the contrary is inherently unreasonable.

This finding is further supported by the parol evidence rule, which operates to prohibit the introduction of oral promises to alter or vary an integrated written instrument. See Filmlife, Inc. v. Mal "Z" Ena, Inc., 598 A.2d 1234, 1235 (N.J. Sup. Ct. App. Div. 1991). Plaintiff attempts to avoid the strictures of the parol evidence rule by arguing that the oral statements are being offered not to refute the written terms of the contract, but rather to prosecute a separate action based upon Defendant's alleged fraudulent inducement. The Court disagrees. While the parol evidence rule includes an exception that allows the introduction of extrinsic evidence to prove fraud in the inducement, that exception is limited to circumstances in which the fraud is related to matters wholly extraneous to the writing. See id. at 1236. Where the subject matter of the fraud is expressly addressed in the integrated writing, however, the parol evidence rule remains as a bar to introducing extrinsic evidence. Id. Here, the fraudulent inducement exception to the parol evidence rule does not apply because the subject matter of the alleged fraud—i.e., that Defendant agreed to extend the franchise and the property lease beyond their original terms—was addressed by the Franchise Agreements' express language that "the term of this [franchise] is subject to [the] underlying lease," and that Defendant "may exercise or may not exercise [any renewal options] at its election." Accordingly, because the substance of  alleged fraudulent representations were both directly addressed and contradicted by the express terms of the Agreements, and because the parol evidence rule prevents this Court from considering Defendant's alleged statements anyway, summary judgment on these claims is appropriate.

11

E.      *Tortious Interference Claims*

Plaintiff's claims of tortious interference are similarly without merit. Plaintiff argues that Defendant interfered with its third-party contracts by "suddenly and unilaterally" seeking to end the franchise relationship and by "seeking to eviscerate the business relationships and goodwill" developed by Plaintiff with others.  Claims for tortious interference with both a contract and a prospective business advantage require a showing that, *inter alia*, Defendant's interference was malicious.  See Matrix Essentials v. Cosmetic Gallery, 870 F. Supp. 1237, 1247 (D.N.J. 1994). Malice, however, need not be evidenced by ill will toward the plaintiff.  See id.; see also Printing-Mart Morristown v. Sharp Electronics Corp., 563 A.2d 31, 37 (N.J. 1989).  Rather, malice is defined as harm intentionally inflicted and without justification or excuse.  See id.  To show "malice," the plaintiff must demonstrate that the defendant's conduct was "'transgressive of generally accepted standards of morality'; that is, a violation of standards of 'socially acceptable conduct.'"  See Matrix Essentials, 870 F. Supp. at 1248 (citing Baldassare v. Butler, 604 A.2d 112, 124 (N.J. Sup. Ct. App. Div. 1992)); see also Restatement (Second) of Torts § 767 (equating the malice requirement with an inquiry into whether the defendant's interference was "improper").

Here, the Court detects no basis for finding that Defendant's failure to renew the expiring property lease was "without justification or excuse," "transgressive of generally accepted standards of morality," or even simply "improper."  Plaintiff essentially seeks to attach liability to the exercise of a right that is expressly provided for in the Franchise Agreements.  The Court finds otherwise.  Regardless of whether or not an option to renew the ground lease existed, the

12

express terms of the Franchise Agreements permitted Defendant to refuse to renew the lease "at

its election."  To find otherwise and force Defendant to extend the ground lease would be to

allow Plaintiff to enter into an arms-length negotiated contract and to then attack its counter-party

for exercising its contractual rights.  Accordingly, because the Court finds that Defendant did not

act with malice in terminating Plaintiff's franchise, but instead merely exercised a bargained-for

right, Plaintiff's tortious interference claims are dismissed as a matter of law.[4]

      Furthermore, Plaintiff's claim of interference with prospective economic advantage also

fails because Plaintiff is unable to show any reasonable expectation of economic advantage

beyond the term of the ground lease because the Franchise Agreements expressly subjugated the

term of the franchise relationship to the term of the ground lease.  See, e.g., Printing-Mart

Morristown, 563 A.2d at 37–38 (requiring, inter alia, that plaintiff's expectation of future

economic advantage be "reasonable").

      F.     *Quasi-Contract Claims*

      Finally, Plaintiff raises common law claims for unjust enrichment and *quantum meruit*,

arguing that Defendant benefitted from Plaintiff's investments in the station and that allowing

Defendant to retain that benefit without compensation would be inequitable.  As an initial matter,

---

[4]Alternatively, the Court doubts that a claim for tortious interference is even appropriate under these circumstances.  Typically, termination of a franchise in accordance with the terms of a franchise does not give rise to a claim of tortious interference with business relations or contracts.  See, e.g., 62B Am. Jur. 2d Private Franchise Contracts § 274 (2009).  In any event, because the parties did not raise this issue, and because the Court finds that summary judgment is appropriate based upon the lack of malice and a reasonable expectation of economic advantage, the Court will not address the issue.

the Court finds that each of Plaintiff's quasi-contract claims are facially invalid because "[q]uasi-contract liability will not be imposed when a valid, unrescinded contract governs the rights of the parties."  See Duffy v. Charles Schwab & Co., Inc., 123 F. Supp. 2d 802, 814 (D.N.J. 2000); Baer v. Chase, 392 F.3d 609, 616–17 (3d Cir. 2004).  The theories of express contract and implied-in-fact contract are mutually exclusive, so that an implied contract may not exist where an express contract covers the same subject matter.  See Baer, 392 F.3d at 616–17; see also Brunwasser v. United States, 2008 WL 5216253, *5 (W.D. Pa. Dec. 11, 2008).  Here, Plaintiff's quasi-contractual claims are barred by the fact that the parties expressly agreed to have the terms of the franchise relationship governed by the Franchise Agreements.  Plaintiff's attempt to circumvent this rule by noting that other courts have allowed quasi-contract claims where the express agreement was found unenforceable is futile because the Court has already held that the Franchise Agreements in this case are valid.  Accordingly, because an express agreement exists between the parties that covers the terms of the franchise relationship, Plaintiff's quasi-contractual claims for unjust enrichment and *quantum meruit* are dismissed as a matter of law.

Alternatively, summary judgment is also appropriate on the merits of Plaintiff's common law claims.  Claims of unjust enrichment, for example, require a showing that the defendant received a benefit, the retention of which would be inequitable.  See Iliadis v. Wal-Mart Stores, Inc., 922 A.2d 710, 723 (N.J. 2007).  Here, Plaintiff argues that permitting Defendant to retain the benefit of its investments would be unjust because the investments were made only with the understanding that Plaintiff's franchise would continue indefinitely.  The Court disagrees.  The express language of the Franchise Agreements make clear that the term of the franchise was

14

subject to the term of the underlying property lease, and that, to the extent that an extension of the ground lease was even available, Defendant was under no obligation to seek one.  As a result, Plaintiff should have been fully aware that the term of the franchise was not indefinite, and that any investments therein were made despite the possibility that the franchise could end upon the expiration of the ground lease.  Moreover, in exercising its right to not renew the ground lease, Defendant did nothing more than exercise a contractual right, and cannot be said to have received any benefits beyond those contemplated by the Franchise Agreements.  See, e.g., Prima v. Darden Rests., Inc., 78 F. Supp. 2d 337, 355 (D.N.J. 2000) (noting that unjust enrichment requires a showing that defendant was enriched "beyond its contractual rights").

Similarly, Plaintiff's *quantum meruit* claim fails because the express terms of the Franchise Agreements made it unreasonable for Plaintiff to expect that the franchise would continue indefinitely.  Claims of *quantum meruit* "rest[] on the equitable principle that a person shall not be allowed to enrich himself unjustly to the expense of another."  See Starkey, Kelly, Blaney & White v. Estate of Nicolaysen, 796 A.2d 238, 242 (N.J. 2002).  Again, Plaintiff argues that it made investments in the station with the understanding that the franchise would continue indefinitely.  As the Court has already explained, however, the Franchise Agreements expressly subjugate the term of the franchise to the term of the ground lease.  Accordingly, because the Court sees no basis for finding that Plaintiff had reason to expect additional compensation beyond that which was provided for in the contract, Plaintiff's *quantum meruit* claim is dismissed on the merits as well.

**IV.**     <span style="font-variant: small-caps;">Conclusion</span>

For the reasons stated, it is the finding of this Court that Defendant's motion is **granted**, and that summary judgment will be entered on all claims.   An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh          
Dennis M. Cavanaugh, U.S.D.J.

Date:          June  29 ,  2009
Orig.:         Clerk
cc:            All Counsel of Record
               Hon. Mark Falk, U.S.M.J.
               File